**Xiu Ying ZOU, Petitioner,**

v.

**Alberto R. GONZALES, Attorney General of The United States, Respondent.**

**No. 04–3516–AG NAC.**

United States Court of Appeals, Second Circuit.

Dec. 30, 2005.

**134**

Thomas V. Massucci, New York, New York, for Petitioner.

Colm F. Connolly, United States Attorney, District of Delaware, Wilmington, DE. (Ellen W. Slights, Assistant United States Attorney, on the brief), for Respondent.

Present: Hon. Guido CALABRESI, Hon. Robert A. KATZMANN, and Hon. Reena RAGGI, Circuit Judges.

## SUMMARY ORDER

UPON DUE CONSIDERATION of this petition for review of the order of the Board of Immigration Appeals ("BIA"), IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the petition for review is GRANTED and the case is REMANDED to the BIA for proceedings consistent with this order.

Petitioner Xiu Ying Zou ("Zou") petitions for review of an order of the BIA affirming the decision of an Immigration Judge ("IJ") ordering her removal to China and denying her applications for asylum, withholding of removal and relief pursuant to the Convention Against Torture ("CAT"). We assume the parties' familiarity with the facts and procedural history of the case.

In order to be eligible for asylum, an applicant must show that he or she is a refugee by establishing that he "is unable or unwilling to return to [his home country] because of persecution or a well-founded fear of persecution on account of" one of five enumerated grounds: "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42); *see also Liao v. U.S. Dep't of Justice,* 293 F.3d 61, 66 (2d Cir.2002). We review an IJ's findings under the substantial evidence standard, and therefore "a finding will stand if it is supported by reasonable, substantial, and probative evidence in the record when considered as a whole." *Secaida–Rosales v. INS,* 331 F.3d 297, 307 (2d Cir.2003). We can reverse only by concluding that no reasonable factfinder could have failed to find that Zou established past persecution or a well-founded fear of future persecution. *See, e.g., Chen v. INS,* 359 F.3d 121, 127 (2d Cir.2004). Additionally, "where the agency's determination is based on an inaccurate perception of the record, ... we may remand for reconsideration or rehearing." *Id.*

In this case, we believe that the IJ's decision, as affirmed by the BIA, was based on an inaccurate perception of the record. The IJ's adverse credibility determination seems to have been based primarily on the erroneous perception that Zou had definitively testified that she became pregnant in June of 2000. The IJ reasoned that this was inconsistent with Zou's testimony that she had missed her menstrual periods in April and May of 2000, and with her testimony that at the time of her allegedly forced abortion in August of 2000, she was visibly pregnant. In her testimony, however, Zou stated that she *discovered* her pregnancy in June.[1]

---

1. The transcript indicates that, in the various colloquies between the IJ and Zou, there was clearly some confusion as to the distinction between when Zou *became* pregnant and

Zou's testimony that she discovered her pregnancy in June is consistent with her having missed menstrual periods in April and May, and with her having been visibly pregnant by August (by which time she would have been approximately four months pregnant). Furthermore, apart from commenting during Zou's testimony that his own preference when he felt "ill and nauseous" was "to get sick inside," the IJ failed to explain why he found implausible Zou's testimony that her boyfriend's neighbors discovered her pregnancy when they saw her vomiting outside after being unable to control herself. Additionally, although the IJ expressed doubt that Zou's physician would have told her, in August 2000, that she was about four months pregnant without conducting an ultrasound, Zou testified that the physician came to this estimate after she informed him that she had begun missing her menstrual periods in April. The IJ did not explain why he found this testimony implausible. Finally, the IJ's finding that Zou's testimony was "very general and meager, and unspecific" is not sufficient to support his adverse credibility determination. *See, e.g., Lin v. U.S. Dep't of Justice,* 428 F.3d 391, 400 (2d Cir.2005) (holding that an "IJ can dismiss an applicant's testimony as too vague to satisfy his burden only if it does not identify facts corresponding to each of the elements of one of the refugee categories of the immigration statutes") (internal quotation marks omitted).

We note that the IJ also based his decision, in part, on the fact that Zou's testimony was inconsistent with the information contained in the State Department's country profile. This alone, however, cannot support the IJ's decision, given Zou's testimony as to the particular circumstances of her case. As this Court has previously explained, where a State Department report "suggests that, in general, an individual in the applicant's circumstances would not suffer or reasonably fear persecution in a particular country, the immigration court may consider that evidence, but it is obligated to consider also any contrary or countervailing evidence with which it is presented, as well as the particular circumstances of the applicant's case demonstrated by testimony and other evidence." *Chen,* 359 F.3d at 130.

For these reasons, the petition for review is GRANTED and the case is REMANDED to the BIA for proceedings consistent with this order.

**Ming Nuan ZHENG, Petitioner,**

**v.**

---

when she *discovered* her pregnancy. For example, the following interchange occurred between the IJ and Zou:

Q. Ma'am, when did you become pregnant?

A. In the mainland.

Q. No, ma'am. Please listen to the question. When is it that you discovered that you were pregnant?

A. It was in June, year 2000.